[L. A. No. 3242.    Department Two.—March 12, 1914.]

## JOE N. SEGLER, Respondent, v. A. CALLISTER, Appellant.

NEGLIGENCE—COLLISION OF AUTOMOBILE WHILE UNDER CONTROL OF RE-
PAIRER—OWNER NOT LIABLE.—The owner of an automobile, which
he has turned over to a mechanic to put in order, but who exercises
no control over the repair work nor over the mechanic in its per-
formance, is not responsible for personal injuries resulting from a
collision due to the negligence of the mechanic, while testing the car,
in the due performance of his work, by operating it on a public
street.

APPEAL from an order of the Superior Court of Los
Angeles County refusing a new trial.  Gavin W. Craig,
Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, for Appellant.

George M. Harker, and Fred J. Spring, for Respondent.

HENSHAW, J.—This is an action for damages.  An auto-
mobile admittedly owned by defendant, came into collision
with a motor bicycle ridden by plaintiff.  Plaintiff was in-
jured, brought his action, was awarded a verdict by a jury,
judgment followed, and from an order denying his motion for
a new trial defendant appeals.

The principal point urged on appeal, and the only one here
necessary to consider, is that defendant was in no way legally
responsible for the injuries sustained by plaintiff.  Herein the
facts are the following: The automobile had been bought by
defendant, who himself could not drive the car, for the pur-
pose of sale.  It was an old car, and he had turned it over to
one McAlbin who conducted a small garage.  McAlbin was to
put it in order, "tune it up," so that it might be sold, was
to receive some small compensation for his services in this
regard, and if thereafter McAlbin was able to sell it for more
than the price Callister put upon it he was to receive a com-
mission accordingly.  McAlbin had had the car in his pos-

session for about a month, working on it at odd times in his efforts to put it in order. The value of his services, together with the garage charges on the car, it was estimated amounted to about eight dollars, which defendant had paid to him, not in money, but in gasoline and oil. Upon a few occasions McAlbin had driven defendant in the car, but without charge for services. He was not employed by defendant as chauffeur or driver, but solely for the indicated purposes. McAlbin worked upon the car only at odd times. Upon Sunday, the day of the injury, McAlbin testifies that he had taken the car out to test it. The water pump was leaking and he sought to locate the trouble. He took the car out upon his own initiative, without instruction or suggestion from the defendant— indeed without the defendant's knowledge. While he was thus alone in the car the collision occurred from which plaintiff's injuries resulted. McAlbin's testimony is corroborated in all essential respects by that of the defendant and there is in the record no direct contradictory evidence. All the evidence upon which it is sought to hold the defendant responsible comes from the testimony of plaintiff touching statements made to him by McAlbin and defendant. Those statements are the following: Plaintiff testified that he was taken to the hospital and that defendant called upon him that afternoon. Asked if the defendant said anything about the driver of the car, he replied: "No, not anything at all in regard to driving the machine, only he said the machine the driver was driving was his machine. He didn't say anything at all then about the driver." Plaintiff further testified that about the second day after he was hurt McAlbin, the driver, came to see him, "and he went on to tell me that he was—this Sunday afternoon he was going somewhere after a trunk or something of that kind with this machine, that they were fixing to go out and make a trip somewhere, he and Mr. Callister I believed. In some way he was going after this trunk to bring back to fix up, you know for this trip. They were fixing—trying to get the machine ready, or fixing on the machine, to get it in condition to go, to make the trip. So that was all, I believe, that he had to say in regards to that." Plaintiff further testified that afterward, upon a certain day, he had a talk with the defendant on the beach, "a little talk—a friendly talk." Defendant said that McAlbin "had been with him a good

while and he was paying him three dollars per day when he was working.

"Q. What kind of work did Mr. Callister say that he was doing? A. He was working on his machine.

"Q. Working on his machine? A. Yes, sir.

"Q. How long had he been working on his machine? A. He didn't tell me how long he was working on it, but he told me whenever—he was paying him three dollars to work on the machine, was about all he had to tell me about it; that he was in his employ some time—he didn't say what time, or how long.

"Q. When did he tell you he was paying him three dollars a day? A. That was when I was—I believe it was the first time he came to see me.

"Q. The first time he came to see you? A. Yes, sir; I believe it was. I believe it was the first time he came.

"Q. What did he say he was paying him this three dollars a day for? A. Well, for his work that he was doing for Mr. Callister.

"Q. State what, if you please, Mr. Segler—anything stated by Mr. Callister in regard to this driver driving the machine. A. Well, he didn't say anything, except this man was working for him at these times; whenever he was paying him this three dollars, and they were fixing up to make this trip; Mr. Callister said they were fixing up to go somewhere, to make some trip, some way. It was some time when I was in the hospital; I couldn't tell you what time it was; I couldn't tell you what day it was.

"Q. What trip did he say he was going to make? A. Some trip out in the mountains somewhere, they were going. That was the words I got, you know, that they were going to make this trip; he didn't say where; they were fixing up for a trip, whenever they got the machine in repairs.

"The Court: Who did he refer to by 'they'? A. Mr. Callister and his driver.

"Mr. Harker: State whether or not both of them told you this? A. They both of them told me that.

"Q. The driver and Mr. Callister? A. The driver and Mr. Callister."

Witness Robinson, called for the plaintiff, testifies that after the accident McAlbin "ran around there like a crazy man,"

saying, "I am awful sorry. I don't want to get in trouble over it. I am willing to fix it up," and, continues the witness, "he kept going from one question to the other, jabbering different statements. I heard his jabbering something away there about going after some trunks." This is all of the evidence in the case connecting, or tending to connect, defendant with it. The evidence does not even tend to raise a conflict with the direct testimony given by the defendant and McAlbin upon any essential matter. McAlbin might have been going for a trunk, though he denies that he was going or that he said he was going, but it is not and cannot be asserted that the evidence shows that he was going at the instance and under the direction of Callister for any trunk of the latter. That Callister employed McAlbin to work on the machine, as plaintiff testifies, is exactly what Callister himself declares. That McAlbin was fixing the machine for a trip to the mountains is quite in consonance with defendant's own statement that he and McAlbin "had talked over many trips and what they were going to do if we ever got the thing in shape—we probably would have made a trip in the near future." We have then the case of a man who has turned his automobile over to a mechanic to put it in order. He exercised no control over the work nor over the mechanic in the performance of the work. If in the due performance of that work it became proper for the mechanic to take the car out on the street to test it, the owner would be no more responsible for damage which might result from the mechanic's bad management of the car than he would if the mechanic, without any authority at all, had taken the car and so used it. The evidence of plaintiff is not sufficient to raise a conflict upon the question, and it certainly needs no citation of authority to show that the owner who has surrendered possession and control of his property under the indicated circumstances to an independent contractor, is not legally responsible for the damages which that contractor may occasion in his use of the property.

The order appealed from is therefore reversed.

Lorigan, J., and Melvin, J., concurred.