[Civ. No. 2722.   First Appellate District, Division Two.—February 14, 1919.]

## JOSEPH A. BROWN, Appellant, v. CHEVROLET MOTOR COMPANY OF CALIFORNIA (a Corporation), et al., Respondents.

Negligence—Automobile Accident — Master and Servant — Prima Facie Case of Responsibility of Master.—Proof of ownership of an automobile at the time of an accident, and its use by a servant of the owner under the owner's permission at such time, establishes a *prima facie* case of responsibility of the owner for injuries resulting from such accident.

Id.—Personal Injuries — Action Against Owner of Automobile—Evidence—Cross-examination.—In an action against the owner of an automobile for damages for personal injuries sustained by the plaintiff through an accident, where the plaintiff had on direct examination, elicited information from the manager of the defendant sufficient to establish a *prima facie* case of agency of the driver, the plaintiff could not object to cross-examination on the same subject which would overcome the presumption arising from the *prima facie* case.

Witness — Cross-examination — For Whom Evidence. — Evidence elicited on cross-examination is testimony. on the part of the party calling the witness and not of the party cross-examining.

Nonsuit—What Considered on Motion.—Upon the determination of a motion for nonsuit all the evidence on behalf of plaintiff, both direct and cross-examination, must be considered.

Negligence—Principal and Agent—Owner and Borrower of Automobile.—The liability of an owner of an automobile for the negligence of the driver depends on the existence of the relationship of principal and agent between the two; and this relation does not result from the mere borrowing of the automobile.

Id.—Use of Automobile by Salesman on Pleasure Excursion—Nonsuit Properly Granted.—In an action for damages for injuries sustained through the negligent driving of an automobile by one of the traveling salesmen of a motor company, where it appeared that at the time of the accident the automobile was being used by the salesman solely on a pleasure excursion for which purpose he had borrowed it from the company, a nonsuit was properly granted.

Id.—Use of Automobile in Defendant's Business—Estoppel.—In an action for damages sustained through an automobile accident, an automobile dealer is not estopped from denying that the automobile which caused the injuries complained of was being used by the de-

fendant in its business merely for the reason that it was being operated under a manufacturers or dealers' license obtained by the defendant under section 9 of the Motor Vehicle Act.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louis Ferrari for Appellant.

Chickering & Gregory and H. L. Breed for Respondent.

HAVEN, J.—Appeal from judgment of nonsuit rendered in an action for damages for personal injuries tried before a jury. The injuries are alleged to have been suffered by reason of the negligent driving by one West of an automobile owned by the defendant and respondent, Chevrolet Motor Company of California, a corporation. West, the driver of the car, was named as a defendant in the complaint, but no service of summons was made upon him, and the case proceeded to trial against the Motor Company as the sole defendant, whose motion for nonsuit was granted at the close of the plaintiff's case.

Appellant urges two grounds for reversal of the judgment. (1) In order to prove the agency of the driver of the automobile for the defendant company, and the consequent liability of that company, plaintiff called as a witness its president and general manager, and proved by him that the automobile which caused the injuries complained of was then being used by West under the permission of said manager, and that it then bore the license number issued to the defendant company under a manufacturers or dealers' license. The defendant's ownership of the automobile at the time of the accident was admitted by the witness on cross-examination.

During the direct examination of this witness, in response to questions propounded by the court, and upon cross-examination by defendant's counsel, further facts were elicited as to the relations between West and the Motor Company and the nature of the permission under which the automobile was being used at the time of the accident. It then appeared that Mr. West was employed by the defendant company as a

traveling salesman to visit prospective dealers in that part of the state of California north of Sacramento and in southern Oregon; that he had no duties in connection with the defendant company in the vicinity of San Francisco; that, on the Saturday afternoon preceding the day of the accident, he asked the general manager of the company for permission to have a car on Sunday to take his family and mother out for a ride, which permission was granted to him. The manager testified that no other conversation took place between himself and Mr. West as to the use of the car. The accident occurred in San Mateo County while the car was being used on this Sunday pleasure excursion.

Under the recent case of *McWhirter* v. *Fuller*, 35 Cal. App. 288, [170 Pac. 417], and many authorities in other jurisdictions, proof of ownership of the automobile and its use at the time of the accident, under the permission of such owner, established a *prima facie* case of responsibility for the resulting injuries as against such owner. Appellant insists that, having established a *prima facie* case, any evidence in conflict therewith was a part of the defense; and that it was the province of the jury to weigh such conflicting evidence and to determine therefrom the ultimate liability of the defendant. The evident answer to this contention is, that the fact which plaintiff sought to prove by the manager of the defendant company was the agency of the driver of the automobile at the time of the accident. Having elicited on direct examination information sufficient to establish a *prima facie* case of such agency, plaintiff could not properly object to further evidence on the same subject on cross-examination, which would overcome the presumption arising from the proof of the *prima facie* case. Any facts as to the nature of the agency were proper subjects of inquiry upon cross-examination, or by the court during the direct examination.

In a somewhat similar case the court of appeals of New York has recently said: "The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and, unless met by further proof, there is nothing to justify a finding based solely upon it. (*Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435, [Ann. Cas. 1918B, 540, 113 N. E. 507].) Here the presumption arising from the fact of ownership was entirely destroyed by

the other evidence.   (*Potts* v. *Pardee,* 220 N. Y. 431, [116 N. E. 78].)

Evidence elicited on cross-examination is regarded as testimony on the part of the party calling the witness, and not as evidence of the party cross-examining.   Upon the determination of a motion for a nonsuit, all of the evidence produced on behalf of the plaintiff, both on direct and cross examination, must be considered.   Taking all this evidence into consideration, it appeared, without conflict, that, at the time of the accident, the automobile was being used by West solely in a pleasure excursion, for which purpose it had been borrowed by him from the defendant company.   The fact that he was an employee of the defendant company, performing duties in another part of the state, did not alter his relations as a borrower of the machine.   Appellant's brief contains a statement that the plaintiff attempted to prove that West was engaged on business of the defendant company on the day of the accident.   Our attention is not called, however, to any portion of the record sustaining this assertion, for which reason it cannot be considered.

The liability of an owner of an automobile for the negligence of its driver depends on the existence of the relation of principal and agent between the two.   This relation does not result from the mere borrowing of such automobile. Hence it is uniformly held that the owner is not responsible for injuries resulting from the negligence of a driver whose only relation to the owner is that of borrower.   (Berry on Automobiles, secs. 601, 684, 685; *Hartley* v. *Miller,* 165 Mich. 116, [33 L. R. A. (N. S.) 81, 130 N. W. 336]; *Chamberlain* v. *California Edison Co.,* 167 Cal. 500, 504, [140 Pac. 25]; *Segler* v. *Callister,* 167 Cal. 377, [51 L. R. A. (N. S.) 772, 139 Pac. 819]; *Cunningham* v. *Castle,* 127 App. Div. [N. Y.] 580, [111 N. Y. Supp. 1057].)   In the case of *Ferris* v. *Sterling,* 214 N. Y. 249, [Ann. Cas. 1916D, 1161, 108 N. E. 406], relied upon by appellant, the ownership of the automobile by the defendant was in controversy.   Neither the owner of the automobile nor the driver was called as a witness by the plaintiff.   Their testimony as to the ownership of the automobile was submitted as a part of the defendant's case and was said to be "not without its suspicious or improbable features." It was held to have been the function of the jury to determine whether or not such testimony was sufficient to over-

come the presumption arising from the proof of the holding of the license by the defendant. In the instant case there is no dispute as to the ownership of the automobile by the defendant; nor does any conflict arise between this admitted fact and the testimony of defendant's manager as to the nature of the permission under which the machine was in use at the time of the accident. In our opinion the motion for nonsuit was properly granted.

(2) The second ground for reversal, urged by appellant, is that the respondent was estopped from denying that the automobile, which caused the injuries complained of, was then being used by said respondent in its business. This for the reason that the automobile was then operated under a manufacturers or dealers' license, obtained by the defendant company under section 9 of the Motor Vehicle Act (Stats. 1915, p. 397). The section referred to provides:

"Every manufacturer of, or dealer in, motor vehicles may make application to the department, by mail or otherwise, upon a blank provided by the department for a general distinguishing number or symbol, instead of registering each motor vehicle owned or controlled by him . . . And the said department shall grant the application if satisfied of the facts stated in the application, and shall issue to the applicant a certificate of registration containing the name and business address of the applicant and the general distinguishing number or symbol assigned to him . . . ; and every motor vehicle owned or controlled by such manufacturer or dealer shall be regarded as registered under such general distinguishing number or symbol until sold or until let for hire or loaned for a period of more than ten successive days."

The application made by respondent to the motor vehicle department for a license under the provisions of the above section was introduced in evidence by the plaintiff, and contained the following agreement signed by the respondent:

"It is agreed by the applicant that in consideration of the issuance of this certificate of registration the number plates issued therewith shall be used only in connection with the business of the purchase and sale of motor vehicles and for no other purpose, and it is further specifically agreed that the said number plates shall not be used upon motor vehicles in the rental, taxicab, stage, trucking or transportation service, or in any commercial business other than that of manu-

facturer or dealer in motor vehicles, and that the said number plates shall remain continuously in the possession of the applicant.  It is still further specifically agreed that upon failure to observe any of the provisions of this agreement the certificate of registration issued to the applicant may be cancelled by the Motor Vehicle Department and that the number plates issued therewith shall be returned to, or may be taken possession of by, the Motor Vehicle Department.''

Appellant argues that inasmuch as the manufacturers' or dealers' license, obtained under the above application contained certain concessions to the licensee not made to the owner of a single automobile, the recipient of such a license is bound by the above agreement and is thereby estopped from claiming that an automobile, bearing such license number, was used otherwise than in the conduct of its business.

To sustain this contention reliance is placed upon the case of *Cargill* v. *Duffy,* 123 Fed. 721.  In that case, the owner of a licensed cab let the same, together with the horse and harness, by the day, for a fixed price, to a driver, to be used by him for the purpose of carrying passengers for hire in the streets of New York.  It further appeared that the owner of the cab had applied for and received from the city of New York a separate badge for each cab owned by him and that when he rented the cab he furnished the driver with such hackman's badge.  The ordinances of the city of New York with regard to the operation of cabs and hacks are set forth at length in the opinion.  Among other provisions, it is prescribed that ''every licensed owner or driver of any hackney . . . shall wear conspicuously on the left breast of the outer coat a metal badge . . . having engraved thereon the words 'Licensed Hack' and the number of such licensed hackney cab, said badge to be issued to and belong to said owner, and to be issued by him to any driver representing him, *and for whom he shall be responsible.''*  Under these facts it was held that the owner of the cab made the cab-driver his representative, and so held him out to the world, and was estopped as to the plaintiff from asserting the contrary or setting up his contract with the driver.  The liability of the owner was predicated on the fact that the cab was ''managed by a driver upon whom he [the owner] had placed a badge of authority which said to such injured person: 'This driver represents

the owner of the cab and for the acts of the driver, such owner is responsible.' ''

The issuance of this ''hackman's badge,'' and its use under the provisions of the ordinance and the authority of the owner of the cab in the business of carrying passengers for hire, distinguish the above-cited case from the one now under consideration. The English cases discussed in the opinion are also distinguished by similar differences of facts and statutory provisions.

In *Trombley* v. *Stevens-Duryea Co.*, 206 Mass. 516, [92 N. E. 764], the facts very closely resemble those here involved. There, as here, the evidence introduced by plaintiff consisted entirely of proof of the nature of the injuries received and damage suffered, the number of the registration tag attached to the automobile at the time of the accident and the certificate of registration, corresponding with that number, showing that the automobile was registered in the name of the defendant. The defendant rested at the close of plaintiff's evidence and moved for a directed verdict in its favor, which was granted. Plaintiff's exceptions to this directed verdict were overruled by the appellate court. It was held that the proof of the certificate of registration, in which defendant's name appeared under the number corresponding to the number of the car, was competent evidence either of defendant's ownership of the automobile, or of his absolute right to its exclusive possession and management. The opinion then proceeds: ''But, to recover, the plaintiff also was required to offer some evidence of the defendant's responsibility for the driver's negligence. The legislature might have said that whenever a registered automobile was operated on the public ways, the person, firm, or corporation named in the certificate should be liable *prima facie* to other travelers for accidents caused by its mismanagement. The statute, however, goes no further than to provide that for the purposes of the issuance, transfer, and revocation of certificates, and the enforcement of the penal provisions of the act, automobiles shall be identified by their register number, and their owner or owners ascertained from the certificate. The common law, therefore, controls, and there is no presumption, from his mere physical possession, that the person operating the automobile was the servant or agent of the corporation. He may have hired or borrowed, or wrongfully

appropriated it to his own use, and in neither event would the defendant be chargeable with the misconduct. (*Shepard* v. *Jacobs,* 204 Mass. 110, [134 Am. St. Rep. 648, 23 L. R. A. (N. S.) 442, 90 N. E. 392].)''

Under a similar statute and somewhat similar facts, the supreme court of Rhode Island reached the same conclusion in *Colwell* v. *Aetna Bottle & Stopper Co.,* 33 R. I. 531, 540, [82 Atl. 388]. In the later Massachusetts case of *Gould* v. *Elder,* 219 Mass. 396, [107 N. E. 59], cited by appellant, the automobile was registered in the name of the son but was owned by his father. It was used in connection with a garage business of which the father was found to be the owner. The statute of Massachusetts required automobiles to be registered in the name of the owner. It was found, therefore, that the automobile, from the driving of which the injuries were received, was not legally registered, and that its operation on the highway was illegal. For that reason the owner was held liable, while in the earlier Massachusetts case, in which no such fact appeared, the owner was absolved from liability.

Upon careful examination of the provisions of the California Motor Vehicle Act, we are unable to find therein any provisions which made illegal the operation of the automobile by West under the circumstances of this case. The only penalty prescribed in the application blank, upon which appellant relies, is that, upon failure to observe the provisions thereof, the certificate of registration may be canceled by the motor vehicle department. The Motor Vehicle Act itself in section 32 thereof provides that ''Any person violating any of its provisions shall be deemed guilty of a misdemeanor.'' The following sections provide for special penalties for the violation of several designated sections of the act. We do not find, however, any provision of the act which can be said to have been violated by the respondent company when it loaned its automobile to its employee West for the purpose of a pleasure excursion. Indeed, as pointed out by respondent, the provision of section 9 of the act that the registration there provided for shall be effective as to every motor vehicle so registered ''until sold or until let for hire *or loaned* for a period of more than ten successive days,'' seems to imply a statutory permission for the loaning of such vehicle under the license for any period less than ten days. Nor

does the California act contain any provision, similar to that of the New York ordinance, making the driver of a licensed automobile the representative of the owner thereof. In the absence of any such statutory provision, either creating a liability against the owner for use of a registered vehicle by a borrower thereof or prohibiting such use, we are unable to perceive how it can successfully be contended that the respondent company represented West to be its agent in the operation of the automobile upon the day of the accident, in such a manner as to constitute the basis of an estoppel against such respondent.

Judgment affirmed.

Langdon, P. J., and Brittain, J., concurred.

'A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1919.

All the Justices concurred, except Olney, J., who was absent.