[Civ. No. 456.  First Appellate District.—April 1, 1908.]

## THE GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN OF WASHINGTON, a Corporation, Respondent, v. IDA MILLER and MARK A. MILLER, Her Husband, and ADA BAPTIST and JOSEPH BAPTIST, Her Husband, Respondents, and ADA BAPTIST, Executrix of Will of MATILDA F. PEACOCK, Deceased, Appellant.

DEATH OF HUSBAND AND WIFE IN SAME CALAMITY—CODE PRESUMPTION OF SURVIVORSHIP.—Where a husband and wife perished in the same calamity, both of them being over fifteen and under sixty years of age, if it is not shown who died first, and there are no particular circumstances from which it can be inferred, it must be presumed, under subdivision 40 of section 1963 of the Code of Civil Procedure, that the husband survived the wife.

ID.—CONSTRUCTION OF CODE—"CALAMITY"—EARTHQUAKE AT SANTA ROSA.—The earthquake at Santa Rosa, of April 18, 1906, by which deaths were caused by the demolishing of brick buildings, and by which the wing of the Occidental Hotel, in which the husband and wife were sleeping, was razed to the ground, causing the death of both of them, was a "calamity" in which both perished, within the meaning of subdivision 40 of section 1963 of the Code of Civil Procedure.

ID.—CONSTRUCTION OF CODE AS TO "PARTICULAR CIRCUMSTANCES" AND "INFERENCE" OF PRIOR DEATH.—Where there was no direct evidence as to who died first, the provision of the code relative to

"particular circumstances from which it can be inferred," merely means that such fact may be proved, like any other fact, by circumstantial evidence, provided there are sufficient circumstances in proof from which the prior death may be inferred as a fact. It does not mean circumstances which would show or tend to show probably that one died before the other, since, if the matter is left to probability, the code settles the presumption.

ID.—BENEFIT CERTIFICATE OF HUSBAND PAYABLE TO WIFE OR CHILDREN UPON HIS PRIOR DEATH.—Where the circumstances of the death of the husband and wife made it impossible to tell which died first, and the husband held a benefit certificate which was payable to the wife, or, in the event of her prior death, was to be distributed upon the subsequent death of the husband among his children in equal shares, the presumption that the husband survived the wife made the benefit certificate payable in equal shares to their daughter and to a daughter of the husband by a former wife. The estate of the last wife took no interest in the certificate.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

W. F. Williamson, for Appellant.

Louis F. Hart, and A. A. Sanderson, for Plaintiff-Respondent.

Bishop & Hoefler, for Respondents Miller.

COOPER, P. J.—This action was brought by plaintiff in interpleader to have the court determine as to who was entitled to $1,000 due by it under a policy or beneficial certificate issued to William Peacock. The $1,000 was deposited with the clerk of the court to abide the result, and plaintiff thereafter had no further connection with the case. The court filed findings, and caused judgment to be entered in favor of defendant Ida Miller. From the judgment so entered this appeal is taken.

The facts out of which this controversy arose may be briefly stated as follows: William Peacock held a beneficial certificate issued by plaintiff, by which it agreed to pay his beneficiaries the sum of $2,000 upon his death. He nominated his wife, Matilda F. Peacock, his beneficiary. The constitu-

tion and by-laws of plaintiff provided that upon the death of a designated beneficiary, in default of a new appointment by the holder of a certificate, prior to his death, then upon the death of the holder of such certificate, the amount should be paid to the children of such deceased, share and share alike.

Both William Peacock and Matilda F. Peacock were killed at Santa Rosa in the great earthquake disaster on the morning of April 18, 1906. They left surviving them their daughter, Ada Baptist; and William Peacock left surviving him Ida Miller, a daughter by a former marriage. These two daughters are the only surviving children of William Peacock, deceased, and Ada Baptist is the only surviving child of Matilda F. Peacock, deceased.

The plaintiff issued two drafts for $1,000, one payable to Ada Baptist, the proceeds of which she has received; the other payable to Ida Miller. The draft which was made payable to Ida Miller was not delivered to her. The amount was and is claimed by Ada Baptist, as executrix of the estate of her mother, Matilda F. Peacock, deceased. In other words, Ada Baptist received $1,000 of the amount due by reason of her father's death; and claims that her sister of the half-blood should receive nothing from the beneficial certificate, but that the other $1,000 belongs to the estate of her mother. Her claim is based upon the contention that her mother survived her father, and hence that immediately upon the death of her father the amount became due by plaintiff to her mother.

The court found that William Peacock survived his wife, Matilda F. Peacock, and the appellant insists that the evidence is not sufficient to support the finding.

Our code (Code Civ. Proc., sec. 1963, subd. 40), provides: "When two persons perish in the same calamity, such as a wreck, a battle or a conflagration, and it is not shown who died first, and there are no particular circumstances from which it can be inferred, survivorship is presumed from the probabilities resulting from the strength, age and sex, according to the following rules. . . . Fourth. If both be over fifteen and under sixty, and the sex be different, the male is presumed to have survived. If the sexes be the same, then the older."

The evidence shows beyond question that the earthquake of April 18, 1906, was a calamity within the meaning of the

above section. With one or two exceptions all the brick buildings in the city of Santa Rosa were demolished. The wing of the Occidental hotel, in which William Peacock and his wife were sleeping, was razed to the ground; the roof and walls fell in, and many people in the building were killed, and many others were killed by the falling of buildings in other portions of the city. In fact, there is no question but that William Peacock and his wife perished in the same calamity. It is admitted that they were both over fifteen and under sixty years of age. It is not shown by any direct evidence who died first, and therefore the presumption must control unless there "are particular circumstances from which it (*who died first*) can be inferred."

The meaning of the statute, in speaking of circumstances from which it can be inferred as to who died first, is that there must be evidence relating to the death and the calamity and the particular facts which would justify a court or a jury in finding the fact as to who died first. The statute does not mean circumstances which would show, or which would tend to show, probably that one died before the other. If the matter is left to probability, then the statute settles the presumption. If it is claimed that one of the parties died before the other, it must be shown that such was the fact, and the statute merely means that such fact may be proven like any other fact by circumstantial evidence. Circumstances from which the fact may be inferred must mean by inferences which are rational conclusions from the facts proven. An inference is indirect evidence. It is defined in our code (Code Civ. Proc., sec. 1958), as "a deduction which the reason of the jury makes from the facts found without an express direction of law to that effect." The above definition, while correct as to an inference to be drawn by a jury, is not so broad or comprehensive as the usual definition of an inference as "a conclusion drawn by reason from premises established by proof; a deduction or conclusion from facts or propositions known to be true." (Bouvier's Law Dictionary, Rawle's Revision.) The idea of the broader definition is contained in section 1900, Code of Civil Procedure, which reads as follows: "An inference must be founded: 1. On a fact legally proved; and 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities

or passions of the person whose act is in question, the course of business, or the course of nature.''

The evidence here shows without contradiction that the bodies of both William Peacock and his wife were found by a rescuing party about 9 or 10 o'clock on the morning of the earthquake, after removing the debris, timbers and mortar, on the same bed in the room in which they had retired the night before, cold in death, and that there was mortar and debris on the bed and over the bodies.   There is evidence to the effect that William Peacock's body was lying flat in bed with one hand under the back of his head; that there was a cut near his temple; that his skull was crushed; that he had a wound in his stomach; that the bedclothes were off his shoulders and off part of one side of his body; that the bed-clothes were off, or rather, at the foot of the bed on the side where Mrs. Peacock lay; that one of her legs was out over the side of the bed; that her body was pretty badly bruised; that there was mortar through her hair, under her eyelids and in her nostrils; that there was a watery substance or foam in her mouth; that her face and body were some-what discolored.   Ada Baptist, and her husband, Joseph Baptist, each testified that when they saw Mrs. Peacock's body ten days after death, when she was buried at Petaluma, her hair was gray from a quarter to half an inch from the scalp, extending from the forehead pretty much over the entire scalp.   Ida Miller testified that about three weeks before the death of Mrs. Peacock she saw her sister, Ada Baptist, put-ting some hair restorer on Mrs. Peacock's hair.   John Pea-cock, a brother of William Peacock, deceased, testified that he saw the body of Mrs. Peacock the next day after the earthquake, and that he noticed no difference in the color of her hair after death from what it was before.   None of the witnesses who assisted in taking out the bodies on the morn-ing of the earthquake testified as to any rim of gray hair near the scalp.   It is sufficient to say that in our opinion it cannot be reasonably inferred that William Peacock died first.   He may have been rendered perfectly unconscious and insensible by the crushing of his skull, and yet may have breathed for a considerable time afterward.   Mrs. Peacock may have made a muscular movement of her feet or thrown the covers from her side of the bed in her agony, and yet have expired the moment afterward.   She did not get off

.the bed where she lay. No one saw them, and no sound of distress reached from the room where they were dying to any living person. As to which one drew the last breath it is impossible to tell.

The evidence supports the finding of the trial court, and the judgment is affirmed.

Kerrigan, J., and Hall, J., concurred.