[Civ. No. 6067. First Appellate District, Division Two.—February 28, 1928.]

KATIE E. WAGNITZ et al., Respondents, v. ROBERT SCHARETG et al., Appellants.

514

Duncan A. McLeod and Robert H. Countryman for Appellants.

Edward J. Lynch for Respondents.

LUCAS, J., *pro tem.*—This is an appeal from a judgment on a $15,000 verdict in a suit for damages resulting from the death of plaintiffs' husband and father, who was struck and fatally injured by an automobile operated by one of the defendants.

About 10 o'clock on the night of December 21, 1919, Katie E. Wagnitz, one of the plaintiffs, and her husband, Edward J. Wagnitz, alighted from a west-bound McAllister Street car, in the city and county of San Francisco, when it stopped at the northeast corner of McAllister Street and Larkin Street, walked around in front of it and started straight across McAllister Street toward the curbing at the southeasterly corner of the intersection of said streets, intending to board the north-bound Larkin Street car, which was

standing at the southeast corner of the streets above named. It was dark and drizzling and the streets were wet. They did not have an umbrella, there was nothing to obstruct their view, and as they started across McAllister Street they both looked to see if any vehicle was approaching along Larkin Street. There was none. Before reaching the sidewalk they started across Larkin Street, walking rapidly toward the rear of the Larkin Street car. They were not yet past a point opposite the front of said car when they first saw an automobile belonging to the defendants Scharetg and driven by defendant Oliver A. McCormick. The automobile was traveling northerly along Larkin Street, and as it drew near them it swerved from the course it was pursuing and came directly toward them. Mr. Wagnitz, who had hold of his wife's arm, pushed her out of the way, was struck by the automobile, dragged a distance of approximately 50 feet, and was so badly injured that he died a few hours thereafter.

Plaintiffs brought suit, joining the Scharetgs and the said Oliver A. McCormick as parties defendant, but the said McCormick was never served with summons.

In their amended complaint plaintiffs allege that at all times mentioned in said complaint the defendants were the owners of the said automobile, and that at all times therein mentioned the said Oliver A. McCormick was in charge of and operating the said automobile on behalf of the defendants Scharetg as owners thereof. These allegations are not denied by the answer.

The plaintiffs plead carelessness and negligence on the part of McCormick. Defendants deny this, and allege that decedent's death was caused by his own negligence.

The cause was tried before a jury. At the conclusion of plaintiffs' case defendants moved for a nonsuit. The motion was denied. At the close of the trial the jury returned a verdict for $15,000 against the two defendants Scharetg. A motion for a new trial was denied, and this appeal is taken from the judgment on the verdict.

In their specifications of error appellants complain: (1) That the driver of the automobile was not acting within the scope of his employment and that therefore they are

not liable as owners; (2) that the accident was unavoidable; (3) that the record shows the deceased to have been guilty of negligence; (4) that the court erred in certain rulings on the admissibility of evidence; (5) that the motion for a nonsuit should have been granted; (6) that the court erred in its instructions to the jury; (7) that no negligence was shown on the part of the driver; and (8) that the verdict was excessive.

As to the question of whether or not the said McCormick was acting within the scope of his employment, defendant Robert Scharetg testified that at the time under consideration he was operating two automobiles for hire, one in the taxicab service and the other (driven by McCormick) in the jitney service; that McCormick's route was from the ferry to Haight and Stanyan, and from the ferry to 29th and Valencia and return; that he was not permitted to operate off of those streets; that he was instructed to run exclusively as a jitney, and that the automobile was insured for the jitney service.

McCormick likewise testified that he had instructions not to drive as a taxicab driver, but was to drive a jitney exclusively. He received for his services one-third of the daily receipts.

It appears from the evidence that shortly before the accident the said McCormick, while driving his jitney along Market Street, took on a passenger who requested to be driven to his home on O'Farrell Street. McCormick removed the jitney signs and started to take the passenger home. No fare was collected, as the trip was never completed.

It may reasonably be deduced from the evidence, however, and in view of the instructions, the jury presumably found that McCormick in deviating a few blocks from his usual route was not engaged in a private enterprise but, on the contrary, was on a mission, the fruits of which would be enjoyed by both himself and his employer.

It is well settled that:

The owner's liability for the acts of a chauffeur "is determined when a satisfactory conclusion is reached as to whether at the time in question the servant was acting within the scope of his employment; whether the acts which he was

performing were expressly or impliedly authorized by his contract of employment. . . . Where the servant acts within the general scope of his authority, notwithstanding the fact that he may be disregarding directions of the employer at the time, the employer may be held liable.'' (*Adams* v. *Wiesendanger*, 27 Cal. App., at p. 593 [150 Pac. 1017]; *House* v. *Fry*, 30 Cal. App. 157 [157 Pac. 500].)

■ Where the evidence conclusively shows that a servant deviated from the general scope of his authority in but a slight and not unusual manner, the court may as a matter of law determine that the servant was about his master's business. If the deviation is great and unusual, the court may likewise as a matter of law determine that the servant was not about his master's business but his own. ■ Cases falling between these extremes will be regarded as involving merely a question of fact to be left to the jury. (See Berry—the Law of Automobiles, 4th ed., pp. 1078, 1079, and cases cited; also, *Kruse* v. *White Bros.*, 81 Cal. App. 86 [253 Pac. 178].)

■ Where it is admitted that the automobile which struck the plaintiff belonged to the defendant employer and that the person driving was his employee, the presumption arises that such person was acting within the general scope of his authority; and such presumption is not destroyed as a matter of law by the testimony of such employee that he was acting on his personal business. The question of whether he was so acting becomes a question of fact for the jury to decide. (*Grantham* v. *Ordway*, 40 Cal. App., at p. 758 [182 Pac. 73]; *Adams* v. *Wiesendanger, supra.*)

■ To rebut the presumption that McCormick was acting within the general scope of his authority, the defendants offered the testimony of defendants Robert Scharetg and McCormick above referred to.

The positive testimony of Scharetg, however, as to the registry of his automobile was contradicted by a communication from the Motor Vehicle Department, while McCormick's testimony was in some respects contradictory of that given by him at the coroner's inquest.

The jury may have considered this sufficient to discredit their testimony.

In addition, two other facts may have been considered significant: (1) McCormick was employed on a percentage basis, itself an inducement to deviate from regular routes to secure additional fares; and (2) the jitney signs were easily removable, thereby permitting such deviation with but little fear of detection.

In any event, the questions relating to scope of employment were questions for the jury to decide and the record is such that we believe the jury was fully justified in concluding that McCormick was acting within the general scope of his employment.

■ Appellants base their contention that the accident was unavoidable upon a statement to that effect attributed to Mr. Wagnitz a short time before he died. When the circumstances under which it was uttered are scrutinized, however, it loses its effect as an admission against interest. Mr. Wagnitz was lying on an operating table at the hospital, suffering intense pain, when a police officer asked him if he wanted to have the driver of the automobile arrested. In reply it is said he answered, "No, the accident was unavoidable." A mere refusal of a dying man to prosecute criminally, although couched in such language, should not preclude his dependents from recovering civil damages.

■ A consideration of all of the evidence convinced the jury that the accident was not unavoidable—and an examination of the entire record convinces the court that the jury was justified in its conclusion.

■ Neither do we find anything in the record to warrant disturbing the jury's verdict on the ground of negligence on the part of the deceased. Prior to crossing the streets both Mr. and Mrs. Wagnitz took precaution to look for approaching vehicles. There being none, they proceeded directly and with ordinary care along a course they had a right to pursue.

■ Appellant assigns as error the action of the court in overruling an objection to an unfinished question which was never answered. It contained an intimation that counsel had records showing that the automobile in question was registered in the names of both the Scharetgs. As counsel later produced a letter from the Motor Vehicle Department reciting such to be the fact, and as the allegation of

joint ownership is not denied by the answer, the assignment of error is not well taken.

Other objections to the court's rulings are equally without merit.

■ So far as the motion for a nonsuit is concerned, it was properly denied. Plaintiffs' ·case contained sufficient evidence of negligence to warrant its submission to the jury. Ownership and the relationship of master and servant were both proven and admitted by the pleadings. This, in the light of *Grantham* v. *Ordway, supra,* established a *prima facie* case.

The following instructions were requested by the defendants and refused:

"You are instructed to find a verdict in favor of the defendants."

"If you believe from a preponderance of the evidence that defendants' operator after first seeing decedent and immediately prior to said collision used all means that a remarkable prudent person ·could use under such circumstances to avoid said collision, if you believe from a preponderance of the evidence that deceased after leaving the street-car proceeded on to or over the intersection of the streets without looking to see whether there were automobiles approaching, and that had defendant looked he would have seen the automobile of defendant Scharetg approaching, and thereby could have avoided said collision with said automobile, then I instruct you that you must render a verdict in favor of defendants."

"If you believe from a preponderance of the evidence that at the time that defendants operated their automobile over Larkin street at the intersection of McAllister street, that the night was rainy or misty and that thereby the operator of defendants' automobile could not see but a short distance ahead of said car and that at that time, and as defendants' automobile approached said intersection defendants' operator used such caution and care as an ordinarily prudent person would use while driving at such place and time, if you further believe from a preponderance of the evidence that deceased at such time proceeded across the intersection of said streets without taking due care to avoid

the approaching automobile and that had *defendant* proceeded across said intersection in a careful manner that *he* could have avoided a collision with the automobile of defendants, then I instruct you that you must render a verdict in favor of defendants.''

As to the first requested instruction, defendants were not entitlëd to an instructed verdict.

The second was properly refused as there is no such person known to the law as a ''remarkable prudent person,'' and because it assumes that the accident would necessarily have been averted had the decedent looked for approaching automobiles.

As to the third requested instruction, the court fully covered its subject matter by general instructions, including one as to the degree of care decedent was bound to use and one to the effect that if the jury should find that defendants' servant was at the time of the accident exercising ordinary care their verdict must be for the defendants.

Appellants cannot seriously contend that there was not evidence sufficient to warrant the jury finding negligence on the part of the driver in view of the testimony that the automobile must have been traveling more than 20 miles per hour at a point where a street-car was stopped for the purpose of discharging and taking on passengers, that it almost struck another passenger who was about to board the car, that it was drizzling and the street was wet, that although there was plenty of space to have avoided hitting either the street-car, Mr. Wagnitz, or the curb, the automobile swerved from its course and headed directly for Mr. Wagnitz, that the driver did not even see Mrs. Wagnitz or the Larkin Street car, and that after striking Mr. Wagnitz it dragged him approximately 50 feet.

Neither can it be seriously contended that a verdict of $15,000 is excessive for the death of a man 56 years old, in good health, with a cash income of $240 per month besides his board, and who devoted all of his income, with the exception of from $10 to $25 per month, to the support of his wife and children.

The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court April 26, 1928.

All the Justices present concurred.