[Civ. No. 10924.   First Appellate District, Division Two.—January 13, 1939.]

MARY C. AUSTIN, Respondent, v. HARRY E. JONES, INC. (a Corporation), et al., Defendants; C. E. BOAG et al., Appellants.

J. R. Moulthrop and William Kay Crawford for Appellants.

Edward C. Purpus for Respondent.

STURTEVANT, J.—The plaintiff filed a complaint against several persons asking for an accounting. She named certain fictitious individuals as defendants but she did not serve anyone claimed to be the fictitious defendant. She also named Harry E. Jones, Inc., a corporation, as one of the defendants. Before the trial the action was dismissed as to that corporation. The other two defendants, C. E. Boag and Loren D. Curtis, answered. The trial court made findings in favor of the plaintiff and from the judgment entered thereon the defendants have appealed.

In form the action is one for an accounting. The defendants assert it is one for money had and received. For reasons that will hereinafter appear we think the assertion of the defendants may not be upheld.

Before proceeding it should be stated that in the early part of the year 1928, M. P. Austin and Mary C. Austin, his wife, were the owners of lots 98 and 118 of tract 1017, said lots being known as 4513 and 4504 Atoll Street, Los Angeles, California. Both lots were paid for, but they did not have additional funds for building purposes. Mr. Austin was actively engaged as a contractor in the concrete business and as such in installing sidewalks, curbs, foundations and similar structures. Harry E. Jones, Inc., a corporation, was engaged in building and constructing dwelling houses. The defendant C. E. Boag was engaged in purchasing lots, building thereon, and then selling the lots together with the improvements. At about the time mentioned above he was the owner and interested in improving lots 4160, 4166, 4144 and 4148 on Camellia Avenue. With him was associated the defendant Loren B. Curtis, who acted as his superintendent of construction. Whether Mr. Boag or Mr. Curtis, or both of them, engaged directly in the construction business the record does not show. Commencing in the early part of the year 1928, after holding various conversations, Mr. Austin and the two defendants entered into oral agreements hereinafter mentioned. As shown by the uncontradicted evidence, Mr. Austin and the two defendants entered into an agreement to build a bungalow on each lot owned by Mr. Austin. Mr. Boag undertook to negoti-

ate the largest loan he could obtain on each lot and the three parties planned to build on each lot the best building they could build for the moneys so borrowed. Mr. Austin agreed to do the concrete work, Mr. Curtis agreed to superintend the construction, and Mr. Boag agreed to negotiate the loan and attend to the finances. To accomplish those purposes it became necessary that the title to the lots should be vested in Mr. Boag. Accordingly, both lots were deeded to him. He negotiated a loan of $4,000 on one lot and $3,750 on the other. Harry E. Jones, Inc., entered into contracts with him under the terms of which that company furnished, under the supervision of Mr. Curtis, the materials and labor and billed Mr. Boag therefor. The latter collected the moneys borrowed and paid the bills presented by Harry E. Jones, Inc. Mr. Austin did the concrete work. He did not personally pay for any labor or material except the concrete work. As to that work it was not claimed he was paid in cash nor otherwise than as will hereinafter be set forth. The defendants testified and supported their testimony by the vouchers of Harry E. Jones, Inc., that all moneys received by Mr. Boag were paid out for work and materials in constructing the bungalows. There was no evidence to the contrary. Mr. Boag also paid out of his own funds $175.51 to pay for said expenses. The houses were built and fully completed prior to July 12, 1928. On May 4, 1928, Mr. Boag reconveyed both lots to Mr. Austin. Acting under the directions of Mr. Curtis, the concrete work on the Camellia lots was done by Mr. Austin for Mr. Boag.

Claiming that the defendants had not accounted to him, Mr. Austin assigned his claim to this plaintiff and she commenced the above-entitled action. In her first amended complaint she pleaded an ordinary action for an accounting and set forth, in part, the transactions enumerated above. However, the plaintiff's allegations and her proof did not correspond. She alleged that Mr. Austin paid to the defendants $7,750 for the purpose of constructing the bungalows and that he installed for defendants concrete work of the reasonable value of $1962.32. The court found said allegations to be true. The evidence did not directly prove said facts. There was evidence to the effect that as a fiduciary for her assignor Mr. Boag received moneys for the account of the former and also that Mr. Austin installed certain concrete work for Mr.

Boag. The plaintiff also alleged that the defendants so became indebted to Mr. Austin for $9,712.42 and that they paid out $7,000 for his account, leaving a balance of $2,712.42 due Mr. Austin. The court found however, that the balance was $1962.32. As stated above, there was no evidence either defendant received any money for Mr. Austin which he did not pay out for Mr. Austin's account. The balance of $1962.32 was, therefore, for concrete work. In their answer the defendants set forth two defenses. In the first one they made some admissions, pleaded some denials, and alleged affirmatively some new matter. The following paragraphs only, of the first defense, are material to an understanding of the contentions made as to that defense on this appeal.

"IV.

"Said defendants . . . allege that Harry E. Jones, Inc., constructed said bungalows and that the said defendant Harry E. Jones, Inc. received therefor for the account of M. P. Austin the sum of $7,569.01, which constituted the total cost of erecting said bungalows including five per cent of the cost thereof for the remuneration of said Harry E. Jones, Inc., for labor and materials furnished in said construction.

"Said defendants . . . allege that any moneys which may have become due to said M. P. Austin, or plaintiff herein, for any work performed or materials furnished on said bungalows as in the first part of said paragraph V set forth, or upon any other work alleged to have been performed by plaintiff or materials alleged to have been furnished by plaintiff and/or M. P. Austin as set forth in said paragraph V of said first amended complaint have been fully paid and that said M. P. Austin and said plaintiff and each of them have been fully compensated for the same.

"  . . .

"VII.

"Said defendants . . . allege that the cost of the construction of said bungalows over and above any work performed thereon or materials furnished thereto by M. P. Austin himself amounted to $7,569.01, which was the sum received by defendant Harry E. Jones, Inc. and that no sum of money whatsoever was received by any of the other defendants herein for said construction. . . . "

As to all of the affirmative allegations regarding Harry E. Jones, Inc., it is sufficient to state there was not a particle of

proof that said corporation was directly employed by the plaintiff. On the other hand the proof was quite clear that Harry E. Jones, Inc., was employed by Mr. Boag to construct and that it did construct the two bungalows on the lots formerly owned by Mr. and Mrs. Austin. During the trial of the action Mr. C. E. Boag was called as a witness. The story as told by him was substantially the story as told by the plaintiff and her husband except in a few very material respects. It was the testimony of Mr. Boag that the original agreement was to the effect that after the houses had been constructed they were to be sold; and that out of the proceeds Mr. Austin was to be paid $1500 for each of the lots; that all of the bills were to be paid and that the balance of the proceeds was to be divided three ways, one-third to Mr. Austin, one-third to Mr. Curtis, and one-third to Mr. Boag. It was an admitted fact that on the 4th of May, 1928, a short time before the completion of the bungalows, acting upon the request of Mr. Austin, he reconveyed both lots and the improvements thereon to the former. He further testified he did so upon the agreement that Mr. Austin would, without charge, install the concrete work on the lots which Mr. Boag was improving on Camellia Avenue, and Mr. Boag and Mr. Curtis would waive any claim to profits on the Atoll lots. The testimony so given by Mr. Boag was corroborated in detail by several other witnesses. However, after such testimony was introduced by the defendants they made no attempt to amend their pleading to conform to the proof. Moreover, except by inference, the trial court made no finding on the specific facts which we have just recited.

The trial court rendered a judgment in favor of the plaintiff for $1962.32. ■ The defendants contend that the findings are not supported by the evidence. Finding number II is: ''That all the allegations contained in Paragraph IV of plaintiff's first amended complaint are true.'' That paragraph of the complaint contains, among others, an allegation as to the reasonable value of cement work done by M. P. Austin. There is not a particle of evidence in the record showing the reasonable value or the agreed value of said cement work.

■ The judgment as rendered was made up of two different items. One was $635.76 for cement work done on the two Atoll lots. That work was done and performed. But,

as recited above, the lots together with the buildings were conveyed to Mr. Austin and he received the benefit, consequently he had no claim against the defendants therefor. In passing it may be stated that Harry E. Jones, Inc., rendered itemized bills which show affirmatively at no time was Mr. Austin or anyone representing him charged for said cement work. The other item entering into the judgment was $1326.66, cement work done on the Camellia lots. The charge for that work, according to the testimony of Mr. Boag, was the consideration for the conveyance of both lots on Atoll Avenue to Mr. Austin. Apparently in anticipation of Mr. Boag's evidence the defendants had alleged in the latter part of paragraph IV of their answer as hereinabove set forth that Mr. Austin had been compensated for all cement work done by him. That allegation was admitted by the findings as will hereinafter appear.

The last statement brings us to the next point. The defendants claim the findings are contradictory. That is so in two material respects. Findings IX and XI are respectively as follows: "IX. That all the affirmative allegations contained in Paragraph IV of defendants' answer to plaintiff's first amended complaint are not true; that it is not true as alleged in Paragraph IV of defendants' answer that the said plaintiff has been fully compensated for all work alleged to be furnished by plaintiff and/or M. P. Austin.

"XI. That all the allegations contained in Paragraph VII of defendants' answer to plaintiff's first amended complaint, are not true, and in this respect the court finds that there was due to the plaintiff's assignor, M. P. Austin, the sum of $1,962.32, for work performed and materials furnished thereto by the said M. P. Austin, plaintiff's assignor, in the construction of said bungalows." Each of those findings is, in the nature of a negative pregnant as to ultimate facts material to the action. In *Wiles* v. *Hammer*, 66 Cal. App. 538, at page 540 [226 Pac. 651], the court said: "It is apparent from the reading of this finding that it does not negative the allegations of defendant's answer above referred to, but is in the nature of a negative pregnant and implies the truth of at least some of these allegations without showing which ones, if any, are untrue. A finding in the form of a negative pregnant, attempting to negative an affirmative allegation, implies the truth of the allegation. (*Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559 [200 Pac. 814];

*Auerbach* v. *Healy,* 174 Cal. 60–65 [161 Pac. 1157] ; *Southern Pac. R. R. Co.* v. *Dufour,* 95 Cal. 615–619 [19 L. R. A. 92, 30 Pac. 783].) We find this condition exists in respect to the findings upon the issues in all three causes of action. The findings, therefore, being inconsistent and contradictory upon the material issues in the case, do not support the judgment. 'The rule on this subject may safely be said to go this far, at least—,that where there are contradictory findings about matters material to the merits of the case, and the determination of which, one way or the other, is essential to the correctness of the judgment, there the judgment cannot stand. If one part of the contradictory findings would support the judgment, and another part would necessarily upset it, then the judgment must be reversed.' (*Learned* v. *Castle,* 78 Cal. 454–460 [18 Pac. 872, 21 Pac. 11, 13].) '' It is therefore clear that finding IX, in effect, found as true all that portion of paragraph IV of the answer of the defendants which we have quoted above. Finding XI, in effect, found as true all that portion of paragraph VII of defendants' answer which we have quoted above. But, if those facts are taken as found in favor of defendants, the plaintiff was not entitled to any judgment.

■ Claiming that the action was barred by the statute of limitations the defendants pleaded section 335 and subdivision 1 of section 339 of the Code of Civil Procedure. As to the form of action pleaded by the plaintiff, an action for an accounting, the statute of limitations applicable was section 343 of said code. (*West* v. *Russell,* 74 Cal. 544 [16 Pac. 392] ; *McArthur* v. *Blaisdell,* 159 Cal. 604 [115 Pac. 52].) But plaintiff's action was filed well within the four-year period. Defendants' contention that the action was barred may not be sustained.

The judgment is reversed and the cause is remanded for a new trial. The trial court is directed to allow the parties to amend their pleadings in such respects as they may be advised.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 11, 1939.