[L. A. No. 18523. In Bank. Feb. 26, 1943.]

DORRANCE P. HICKS et al., Respondents, v. JOHN REIS et al., Defendants; FRED W. GRAY, Appellant.

Jennings & Belcher, Frank B. Belcher and Louis E. Kearney for Appellant.

James C. Hollingsworth, Henderson & Churchill and E. Perry Churchill for Respondents.

PETERS, J. pro tem.—Plaintiffs, husband and wife, recovered judgment against defendants Stanley Reis and John Reis in the sum of $6,487, and against defendant Fred W. Gray in the sum of $5,000, as damages for injuries sustained by them in a collision of their automobile with a car owned by Gray and driven by Stanley Reis at the request of John Reis, an employee of Gray. Gray was held liable under section 402 of the Vehicle Code, imposing liability on owners up to $5,000 for the negligence of any person using or operating an automobile with the consent, express or implied, of the owner. The case was tried before the court without a jury. Gray alone appeals.

The trial court found that the Oldsmobile driven by Stanley was owned by Gray; that John was, on June 14, 1940 (the date of the accident), employed by Gray; that at the time of the accident John and Stanley "did carelessly, recklessly, and negligently drive and operate said Oldsmobile" so as to cause it to collide with respondents' car; that as a proximate result of such negligence the respondents suffered the damages found by the court; that at the time of the accident "John Reis was using and operating said Oldsmobile automobile with the permission of defendant Fred W. Gray"; that Stanley Reis was driving the car "at the request of and

under the immediate direction and control of defendant **John Reis.**" ■ One of the main contentions urged by appellant is that, as a matter of law, the finding that he granted permission to John Reis to use the car is unsupported by the evidence. On this issue the evidence most favorable to respondents is as follows:

Appellant was a dealer in second-hand cars, Frank P. Hume was his salesmanager, and John Reis was employed as a salesman. On the night of June 13, 1940, John, being then alone on the sales lot and admittedly then in charge of the lot, left his own automobile there, and took an Oldsmobile belonging to appellant from the lot to his home. The next day was his birthday and he did not report for work. During the day he drove the Oldsmobile some thirty-seven miles. On that night John and his brother Stanley, and two women, took a ride in the car, Stanley, at John's suggestion and request, driving. They drove from Los Angeles to Oxnard, a distance of over sixty miles, and on the return trip the accident with respondents occurred. The question to be determined is whether the trial court's finding that at that time and place John was using the car with the consent of appellant is supported by the evidence. On this issue respondents were compelled to rely on the testimony of John and of appellant, defendants called under section 2055 of the Code of Civil Procedure, and upon the testimony of Hume, salesmanager of appellant. John testified that he had been working for appellant about three weeks before the accident; that he had worked for appellant on a prior occasion; that at no time during his previous or during his last employment had he ever been instructed by Hume or appellant, or anyone else, not to take cars from the lot without first securing the consent of appellant or of Hume; that he had never been informed of any such rule; that during his last employment, on several occasions, he had taken cars off the lot to demonstrate them to prospects; that he had occasionally taken a company car from the lot and driven to lunch; that if Hume was there he told Hume where he was going, not to secure his permission, but so that he would know where he was; that if Hume or appellant were not there he took the cars without telling anyone; that Hume knew he took the cars for these purposes; that when he had left appellant's employ on the previous occasion he had not been fired by Gray for taking a car overnight without permission; that no such thing occurred; that he left his em-

ploy with appellant to secure more money and that appellant told him of another job and introduced him to his new employer; that sometime prior to June 13, 1940, he became interested in purchasing the Oldsmobile for himself; that he discussed the purchase with appellant, and particularly discussed with him the details of the proposed purchase; that he also discussed the proposed purchase with Chapman and Daly, two other employees of appellant; that he ran the motor on the lot but wanted to assure himself the car was in good condition; that he took the Oldsmobile for that purpose; that on June 14th he drove the car some thirty-seven miles and was satisfied with its performance; that on the night of June 14th when they rode to Oxnard he "would have liked to have had" his brother Stanley's opinion of the car before he purchased it; that he asked Stanley to drive.

Much of this evidence was contradicted by appellant and his salesmanager, Hume. Appellant testified that when Reis was formerly employed by him he took a car from the lot and kept it overnight and was discharged for so doing; that when he re-employed John, about three weeks before the accident, he told him that it was a rule of the company that no car should be taken from the lot without his consent, or the consent of Hume; that he never had any conversation with John about the purchase of the Oldsmobile; that he never knew of John taking a car to lunch and never knew of John taking a car off the lot for any purpose without first securing permission. He admitted, however, that on the night of June 13, 1940, John was in charge of the lot and was authorized to write contracts of sale. Although he testified that no salesman ever took a car off the lot for demonstration or other purposes without consent, he also testified that salesmen were empowered to demonstrate cars "around the block" and that he instructed Reis that "if anyone wanted a demonstration to go with him."

Frank P. Hume, salesmanager of appellant, corroborated appellant in most respects. He contradicted John Reis by testifying that he had instructed John that cars were to be taken off the lot for demonstration purposes only and that either he or appellant must be notified if a car was taken. He testified that he had no knowledge of any case when a salesman had ever taken a car without first securing permission.

On this evidence, can it be said that the finding that John

was using the car with the permission of appellant, is totally unsupported by the evidence as a matter of law? The fact that Stanley was actually driving the car is immaterial. The evidence clearly demonstrates that John was using and operating the car through the instrumentality of Stanley. Both John and Stanley so testified. ■ The law is well settled that under section 402 of the Vehicle Code the owner is liable to the extent there limited if his permittee consents to another driving, at least where the permittee accompanies the driver. (*Sutton* v. *Tanger,* 115 Cal.App. 267 [1 P.2d 521]; *Hughes* v. *Quackenbush,* 1 Cal.App.2d 349 [37 P.2d 99]; *Armstrong* v. *Sengo,* 17 Cal.App.2d 300 [61 P.2d 1188].) The real question, therefore, is whether there is any evidence, or inference from the evidence, to support the finding that John was using the car with the permission of appellant at the time of the accident.

■ The law is settled that "If the evidence shows that an automobile was being driven by an employee of the owner at the time of an accident, the jury may infer that the employee was operating the automobile with the permission of the owner." (*Blank* v. *Coffin,* 20 Cal.2d 457, 460 [126 P.2d 868]; see, also, *Bushnell* v. *Yoshika Tashiro,* 115 Cal.App. 563 [2 P.2d 550]; *McWhirter* v. *Fuller,* 35 Cal.App. 288 [170 P. 417]; *Pozzobon* v. *O'Donnell,* 1 Cal.App.2d 151 [36 P.2d 236]; *Brown* v. *Chevrolet Motor Co.,* 39 Cal.App. 738 [179 P. 697]; *Wagnitz* v. *Scharetg,* 89 Cal.App. 511 [265 P. 318]; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590].) Under this rule the trial judge, as the trier of the facts, was justified in inferring permission existed. ■ Appellant contends that the inference was rebutted as a matter of law. Such contention is not sound. The trier of the facts is the exclusive judge of the credibility of the witnesses. (§ 1847, Code Civ. Proc.) While this same section declares that a witness is presumed to speak the truth, it also declares that "This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or his motives, or by contradictory evidence." In addition, in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. (See cases collected 27 Cal.Jur. 180, § 154.) ■ Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony

of a witness, even though the witness is uncontradicted. (*Blank* v. *Coffin, supra; Hinkle* v. *Southern Pacific Co.,* 12 Cal.2d 691 [87 P.2d 349]; *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556 [90 P.2d 371]; *Burke* v. *Bank of America etc. Assn.,* 34 Cal.App.2d 594 [94 P.2d 58]; *People* v. *La Fleur,* 42 Cal.App.2d 50 [108 P.2d 99]; see cases collected in 27 Cal.Jur. 182, § 156; 8 A.L.R. 796.) As a general rule, therefore, the trier of the facts is free to disbelieve the evidence as to the non-existence of the fact of permission, and to find that it does exist solely on the basis of the inference. (*Blank* v. *Coffin, supra; Bushnell* v. *Yoshika Tashiro, supra; Day* v. *General Petroleum Corp.,* 32 Cal.App.2d 220 [89 P.2d 718].) In discussing the rule that the trier of the facts may find the fact of permission to exist based on the inference even where the evidence contrary thereto is uncontradicted, the court, in *Market Street Ry. Co.* v. *George,* 116 Cal. App. 572, 576 [3 P.2d 41], stated: ''It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it be credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose, and if they do refuse it credence it is of no more effect than if it had not been given. It disappears from the case and the inference opposed to it is no longer contradicted.''

▮ To these well settled rules there is a common sense limited exception which is aimed at preventing the trier of the facts from running away with the case. This limited exception is that the trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. The trier of the facts may not believe impossibilities. When the rebutting testimony is of such a nature that the minds of reasonable men cannot differ on the subject, then the trier of the facts cannot, and should not be permitted to, indulge in the inference. If there is any reasonable doubt as to whether the inference, as a matter of law, has been rebutted, that doubt should be resolved in favor of submitting the question to the trier of the facts. This limited exception was expressed

as follows in *Blank* v. *Coffin, supra,* at page 461: "If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it cannot rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law," citing *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709]; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198]. In the same case, after pointing out that the jury is the sole judge of the credibility of the witnesses and may disbelieve an uncontradicted witness if there is any rational ground for doing so, the court stated (p. 461): "In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference."

The instant case clearly discloses a factual situation where the question as to whether the inference was rebutted was for the trier of the facts. The rebutting testimony was not uncontradicted. Practically every material fact testified to by appellant and his employee Hume on the issue of permission, was directly contradicted by John Reis, another defendant. Thus John contradicted their testimony that a rule existed prohibiting employees from taking cars from the lot; that they had informed John of this rule; that John had been fired on a previous occasion for taking a car without permission; that John had never taken a car from the lot without permission; that John had discussed the purchase of the car with them. The trial judge, as the trier of the facts, saw these witnesses. He knew appellant and Hume were financially interested in defeating liability. He chose to believe John and to disbelieve appellant and Hume. That was his province. Under such circumstances he was justified in disbelieving all the evidence proffered by appellant on the issue of permission. He was also justified in basing his finding of permission solely on the inference. Moreover, the inference was supported not only by the evidence that the Oldsmobile belonged to appellant and John was his employee, but also by the evidence of John. From his testimony it is reasonable to infer that employees had the permission of appellant to take cars from the lot whenever it was reasonably necessary to perform their duties; that John took the Oldsmobile in order to satisfy himself before purchasing it; that

662

appellant knew he was a prospective purchaser, and that appellant impliedly consented to the taking.

Appellant urges other points for a reversal. He contends that the court's finding on contributory negligence on the part of respondents is in the form of a negative pregnant, and, in effect, finds that respondents were guilty of contributory negligence. In his answer appellant pleaded on information and belief as "a separate and affirmative answer and defense" that respondents were guilty of contributory negligence. The trial court found "That all of the allegations contained in paragraph I of the separate and affirmative answer and defense of defendant, Fred W. Gray, contained in the answer of defendant, Fred W. Gray, on file herein are not true." By thus finding that "all" such allegations were not true appellant urges that the court necessarily found that some of them were true, citing such cases as *Austin* v. *Harry E. Jones, Inc.*, 30 Cal.App.2d 362 [86 P. 2d 379], and *Wiles* v. *Hammer,* 66 Cal.App. 538 [226 P. 651]. It is true that when an allegation in a pleading contains a series of affirmative allegations, a finding that "all" of them are not true implies that some of them are true. But that is not the situation here. In this case the affirmative defense presented a single issue, that is, whether respondents were guilty of contributory negligence. No other ultimate fact was presented by the defense. The finding that all of the allegations of the defense were untrue necessarily amounts to a negativing of the defense. This is fundamentally different from the situation presented in the Austin case. There the court found that "all the affirmative allegations" in a designated paragraph of an answer were not true, and then in the same finding found that a specific allegation of that paragraph was not true. Obviously, in finding that all the "affirmative" allegations were untrue, the court fell into the same error as where a court finds that "all material" allegations are true or untrue. The uncertainty thus created voids the finding. Moreover, by finding one specified allegation of the paragraph was untrue, the court cast doubt on what it meant by "all affirmative allegations." That is not the situation here. In the instant case there is no doubt but that the trial court intended to and did find that respondents were not guilty of contributory negligence. Similar findings have frequently been upheld. (*Heinrich* v. *Heinrich,* 2 Cal.App. 479 [84 P. 326]; *Stevens* v. *Stevens,* 215

Cal. 702 [12 P.2d 432]; *Hackler* v. *Tubach*, 129 Cal.App. 680 [19 P.2d 295].)

■ Appellant also contends that the trial court erroneously, over his objections, permitted John Reis to testify as to a conversation had with Daly, another employee of appellant, in which conversation Reis testified he told Daly he was going to take the Oldsmobile. Appellant urges that there was no showing that Daly had authority to permit the car to be taken. Although there was no evidence of authority on the part of Daly to authorize the taking, and, therefore, the evidence was not admissible to show permission, it was admissible to show the facts surrounding the taking, and to show the conduct of John Reis in taking the automobile. The important issue was whether employees were authorized to take cars without permission. The fact that John told Daly he was taking the car was relevant evidence to support his contention that there was no rule prohibiting the taking of cars. John's conduct in taking the car was relevant on this issue.

The judgment appealed from is affirmed.

Gibson, C. J., Shenk, J., and Curtis, J., concurred.

CARTER, J., Concurring and dissenting.—I concur in the judgment of affirmance as I am of the opinion that the evidence is sufficient to justify the inference that John Reis was using and operating the automobile involved in the accident with the permission and consent of defendant Gray at the time of the accident.

I do not, however, agree with that portion of the majority opinion which places reliance upon the rule announced in the majority opinion in the case of *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868], with reference to when an inference may be rebutted as a matter of law, and I adhere to the views which I expressed in my concurring opinion in the case of *Blank* v. *Coffin, supra,* which, when applied to the facts of this case justify the conclusion reached by the trial court.

To my mind there is no basis in reason, logic or common sense for the statement in the majority opinion that ''when the rebutting testimony is of such a nature that the minds of reasonable men cannot differ on the subject, then the trier

of facts cannot, and should not be permitted to, indulge in the inference.'' The import of this statement is that if the trial judge or the jury draws an inference from certain proven facts notwithstanding rebutting evidence which an appellate court considers sufficient to rebut the inference, then, the trial judge and the members of the jury do not have reasonable minds; in other words, the inevitable effect of such a rule is that in every case in which an appellate court thinks that an inference has been overcome by rebutting evidence and reverses a finding of a trial judge or a judgment based upon the verdict of a jury, both the trial judge and the jury are placed in the category of persons not possessing reasonable minds. Such a theory is not the product of sound reasoning and disregards the basic concept of the finality of determination of issues of fact by the trial forum. A trial judge and a jury hear the witnesses testify, observe their demeanor on the witness stand, scrutinize the exhibits, and in many cases make ocular observation of the subject matter of the action. They are in a much better position to determine the weight and effect of an inference than any appellate court justice could possibly be. If, as the majority opinion concedes, the trier of fact is the exclusive judge as to the weight and effect of evidence, then it must necessarily follow that when evidence is presented from which the trier of fact is justified in drawing an inference, if he sees fit to give such inference greater weight than any evidence offered in rebuttal, it should not lie in the province of an appellate court to say that because he accorded to the inference greater weight than the evidence opposed to it, he did not possess a reasonable mind. The trial judge and the jury are presumed to have reasonable minds, the majority opinion to the contrary notwithstanding. If we indulge in the presumption that appellate and Supreme Court justices have reasonable minds, we have a situation in every case where it is contended that an inference was rebutted, in which there may be reasonable minds on both sides of the issue. To then apply the rule announced in the majority opinion would in every case result in an affirmance of the judgment based upon inferences drawn from proven facts if a logical course of reasoning is pursued. In a trial by jury where all twelve jurors agree upon the verdict and the trial judge denies a motion for a new trial we have a situation where there are thirteen minds concurring in the same con-

clusion. Should they all determine that an inference should prevail over rebutting evidence to the contrary, and three justices on an appellate court should arrive at a contrary conclusion, we would have the anomalous situation of three justices who did not hear the witnesses testify, observe their demeanor on the stand or have any personal contact with the subject matter of the action declaring that none of the thirteen persons constituting the trial forum possessed reasonable minds. The absurdity of this type of metaphysical legalism should be so apparent that no reasonable mind should venture to promulgate it much less announce it as a principle of jurisprudence.

TRAYNOR, J.—I dissent. The operative fact incumbent upon plaintiffs to establish in this case was the owner's consent to the use of the automobile. This fact must be established, not with certainty or beyond a reasonable doubt, but as probably true. Only if the trier of facts could reasonably conclude from the evidence that it was more probable that the employee was operating the automobile with the owner's consent than without it can the finding to that effect be sustained. Such a conclusion may be reached by way of an inference, in accord with the rule recently affirmed in the majority opinion in *Blank* v. *Coffin*, 20 Cal.2d 457, 460-461 [126 P.2d 868]: "An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. (Cal. Code Civ. Proc., secs. 1958, 1960, 1832; see cases cited in 10 Cal.Jur. 736-738, sec. 59.) It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain primary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue. The jury is not compelled to draw the inference, however, even in the absence of contrary evidence and may refuse to do so. Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury. (See cases cited in 10 Cal.

Jur. 738-739, sec. 60.)'' This language makes it clear that an inference from the facts proved must be a reasonable one. The essence of an inference is its reasonableness, as this court recognized when it denied a hearing in *Maupin* v. *Solomon*, 41 Cal.App. 323, 326 [183 P. 198], declaring: ''When we say that a certain inference is warranted by certain facts proved, we mean no more than that the jury is reasonably warranted in making that deduction from the facts.'' (See, also, *Crouch* v. *Gilmore Oil Co.*, 5 Cal.2d 330 [54 P.2d 709]; *Grand Lodge of A.O.U.W.* v. *Miller*, 8 Cal.App. 25 [96 P. 22].)

The majority opinion, invoking certain statements in *Blank* v. *Coffin, supra,* holds that the single fact that John Reis was appellant's employee warrants the inference that he was operating the automobile with appellant's consent at the time of the accident, and reduces the issue to whether the inference was dispelled by the evidence. The first question, however, is whether an inference of consent can reasonably be drawn from all the evidence favorable to plaintiffs; if it cannot, the question whether it is dispelled never arises. It is my opinion that such an inference cannot reasonably be drawn from the single fact that the person operating the automobile at the time of the accident was an employee of the owner. The statements in *Blank* v. *Coffin* that it can are too broad and must be read in the light of the many facts in that case beyond the single one that the automobile was operated by an employee of the owner: ''The testimony of Coffin and Stuperich revealed the following facts that would justify the jury in concluding that Coffin was driving the automobile with the tacit permission of the defendant: Coffin was given exclusive possession of the automobile; he kept it in his own garage without charge to the company; the manual of instructions that he received forbade the use of the car on vacations, but did not forbid its use for personal matters; the company could determine that Coffin was habitually using the car for his personal business by checking his mileage reports against his gasoline reports; Coffin was not discharged after discovery of his use of the car on a weekend trip and was allowed to resume possession of it after a short lay-off.'' It was the sum of all these facts that led the court to hold that the inference of the owner's consent was a reasonable one. When, however, the fact stands alone

that the car was operated by an employee of the owner, there is no more reason to infer the owner's consent from the employer-employee relationship than there would be to infer it from any one of countless social or business relationships that could exist between the operator of a car and its owner. It does not follow that because an employer owns a car he consents to its use by an employee, or that a car taken by an employee from his place of employment is taken with the owner's consent any more than if it were taken from the street.

No such inference can be drawn in the present case from the evidence most favorable to respondents. John Reis was in charge of the lot the night he took the car. He had his own car with him and had not requested permission to take a company car from the lot. He took the car without the knowledge of appellant or Hume, the manager of the lot. He kept it overnight, but did not report for work the next day, which was his birthday. On a previous occasion he had taken a car out overnight and returned it the following morning after covering a distance of 14 miles. He had occasionally taken cars from the lot for demonstration to customers and for transportation to lunch a few blocks away. He was interested in purchasing the automobile and had talked with appellant about it, but was financially unable to make such a purchase. He had five years' experience in selling used cars and was familiar with motors. He had run the motor while it was standing on the lot and on the night of June 13th drove it six or seven miles to his home. He was not satisfied with it then but by the time he had driven it the next day for about 37 miles he was satisfied with its performance. That night he and his brother Stanley and two women took a ride in the car. The purpose of this trip was "mainly social." John Reis wanted his brother's opinion of the car and asked him to drive. John Reis thought they would go on to Santa Barbara but they turned back at Oxnard, about 60 miles out of Los Angeles, because of the chilly weather. John Reis sat in the rumble seat part of the time with one of the women and the rest of the time alone.

A trier of facts might reasonably infer from this evidence that John Reis had appellant's permission to use cars on the lot for demonstration and for small personal errands, and to try out the car himself in the usual manner as a prospec-

tive customer. It is quite another matter to infer that he had the owner's consent to retain the car for thirty-six hours or more and take his brother and two women on a 120 mile pleasure trip. There is no evidence from which it can reasonably be inferred that appellant gave his consent to so extensive an appropriation of the automobile. The rule is well settled that the owner is not liable for injuries caused by the user of his car in the course of a use exceeding that for which consent was given. (*Henrietta* v. *Evans,* 10 Cal. 2d 526 [75 P.2d 1051] ; *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059] ; *Di Rebaylio* v. *Herndon,* 6 Cal.App.2d 567 [44 P.2d 581] ; *Souza* v. *Corti,*█ (Cal. App.) [129 P.2d 729].)

Edmonds, J., concurred.

Appellant's petition for a rehearing was denied March 25, 1943. Edmonds, J., and Traynor, J., voted for a hearing. Schauer, J., did not participate therein.