[Civ. No. 14302. First Dist., Div. Two. Dec. 29, 1950.]

JENNIE ROSENBERG et al., Respondents, v. CLARENCE E. BERRY et al., Appellants.

Francis N. Foley for Appellants.

Elmer P. Delany and Martin J. Jarvis for Respondents.

SCHOTTKY, J. pro tem.—Plaintiffs, heirs of Max Rosenberg, commenced an action for the wrongful death of the latter against defendants Berry and Howard. At the trial defendants stipulated that Max Rosenberg was injured and died as the result of the negligent operation of the automobile by defendant Berry, and that Berry was operating it with the permission of the owner, defendant Howard. The only issues left for determination were the amount of damages and whether the defendant Berry at the time of the accident was driving the automobile as an agent or employee of defendant Howard.

At the conclusion of the testimony defendant Howard moved the trial court to instruct the jury that the verdict against defendant owner could not (under Veh. Code, § 402) exceed $5,000, which motion was denied by the court. The jury returned a verdict against both defendants for $18,000, a motion for a new trial was denied, and both appellants have appealed from the judgment.

Only two grounds are urged by appellants: 1. There is no substantial evidence sufficient to support the implied finding of the jury that defendant Howard was liable for defendant Berry's negligence under the doctrine of *respondeat superior;* and 2. The damages are excessive.

In view of the fact that the sufficiency of the evidence is the principal question involved, we shall first give a brief summary of the factual situation as disclosed by the record.

At the date of the accident, September 26, 1947, defendant John Howard was engaged in the used car business with a silent partner, Monroe McNaughton, under the name of Mid-Valencia Motors, 1236 Valencia Street, San Francisco. At that date and for about one year and five months prior thereto, Clarence Berry had been employed by Howard as a salesman. He testified that his duties also included cleaning and washing the cars, that his salary was $300 per month and that his working hours were from 8:30 a. m. to 6:30 p. m. Berry did not own an automobile at the time, but testified that there was an understanding that he could take any car he wanted from the lot, and that he usually parked whatever car he was using in front of his hotel all night.

Sometime during the day of September 26, 1947, the date of the accident, a 1937 Oldsmobile 8 sedan arrived at the Mid-Valencia Motors, having been purchased by the silent partner, McNaughton. At about 6:30 p. m. on that day, Berry left the lot driving the aforementioned Oldsmobile. He called for a friend, Miss Sanders, took her to dinner, and then drove out to the home of Charles Huber, who lived near Daly City. Huber was a used car dealer with whom, according to the testimony of both Berry and Howard, there had been a course of business dealings in regard to buying and selling of used automobiles and the exchange of business information by Howard personally as well as through his employee, Berry. Berry testified that the purpose of his call on this occasion was "social." He left Miss Sanders sitting in the car in front of Huber's house. According to Miss Sanders' testimony, she had on prior and subsequent occasions gone to Huber's house with Berry. Huber was not at home. Berry then drove to the home of defendant Howard. He testified that he had probably told Howard that he would drop in on Howard that evening, that it wasn't definite. On recross-examination his deposition taken in February, 1948, was read to him in which he testified that he had told Howard that he would be by his house that evening. Howard was not home when Berry and Miss Sanders arrived. Mrs. Howard served them a cocktail, while they waited about an hour until Howard arrived at about 9 or 9:30, according to Miss Sanders; 10 p. m. according to Berry. They remained at the Howard home until about 11:30 p. m. The accident occurred on Mission Street while Berry was enroute from the Howard residence to Miss Sanders' home. Berry testified that after the accident that night he returned the car to Howard's place of business, although he had originally intended to park it at his hotel. The reason given for changing his mind was that because he was upset and disgusted he decided to walk home.

Howard in testifying did not clearly recollect when the Oldsmobile was acquired, but thought it had been procured about two days before the accident, but later, after examination of his records, he acknowledged that it was acquired on the day of the accident. Howard stated that he and Berry left the lot about the same time on the evening of September 26, 1947, that he didn't know whether or not Berry drove away in the 1937 Oldsmobile. When recalled as a witness for plaintiffs, and having had an opportunity to look over his records, Howard recalled that the Oldsmobile was delivered

to his used car lot on September 26, but could not recall who delivered it or the time of day that it was delivered. Both he and Berry denied that Berry called for the car at the place of purchase. When Howard was asked if he met Miss Sanders for the first time when Berry brought her to the Howard home he replied, ''No, I believe she was in the place of business before.'' However, Miss Sanders testified that she had been to Howard's home before the night of the accident with Mr. Berry, but never since that time.

Howard, Berry and Miss Sanders all testified that Berry's call at Howard's home was social. Berry stated he sometimes went out to play cards at Howard's, and that he also occasionally played cards at Huber's home. Neither Huber nor Mrs. Howard were called as witnesses.

Howard stated positively that he had no understanding with Berry about Berry coming to his home on September 26, that he did not even know he was coming out that night. Berry in both his deposition and his testimony at the trial stated that he had talked with Howard about calling there that evening.

We shall first discuss appellants' contention that the record does not support the implied finding of the jury that appellant Berry was acting as the employee or agent of appellant Howard at the time of the accident. Appellants assert that respondents relied solely on the inference that Berry was acting as the employee of Howard because he was driving an automobile owned by his employer, Howard.

In the case of *Bushnell* v. *Yoshika Tashiro,* 115 Cal.App. 563 [2 P.2d 550] (hearing denied), the court said at page 565:

''The decisions are uniform in holding that in an action for damages against an employer for personal injuries caused by the negligence of his employee while operating the employer's automobile, proof that the automobile belonged to the employer and at the time of the accident was being operated by the employee raises an inference sufficient to establish a *prima facie* case that the automobile was being operated by the employee under the authority of the employer and within the scope of the employment, and that the burden is then upon the defendant to overcome or dispel such inference by proof of facts to the contrary. Among the numerous cases so holding are *McWhirter* v. *Fuller,* 35 Cal.App. 288 [170 P. 417] ; *Brown* v. *Chevrolet Motor Co.,* 39 Cal.App. 738 [179 P. 697], and *Wagnitz* v. *Sharctg,* 89 Cal.App. 511 [265 P. 318]. And it is further held that such inference is not destroyed or overcome as a matter of law merely because it is contradicted by the

testimony of the employee or of other witnesses produced on behalf of the defendants, but that the issue remains one of fact for the determination of the jury for the reason that, as sole judges of the weight of the testimony and the credibility of the witnesses, the members of the jury are not bound to accept such testimony as true, but may, if not convinced thereby, reject any portion of the whole thereof. (citing cases.)."

In *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590], the court said at page 371:

"The defendant Talsky further contends that the court erred in refusing to direct a verdict for him on the ground that Willde was not acting in the scope of his employment when the accident took place. The facts that Willde was an employee of Talsky and driving a car owned by him, give rise to an inference that Willde was acting in the scope of his employment. (*Pozzobon* v. *O'Donnell,* 1 Cal.App.2d 151 [36 P.2d 236]; *Kruse* v. *White Bros.,* 81 Cal.App. 86 [253 P. 178]; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198].) This inference was not dispelled as a matter of law by the evidence."

In *Nash* v. *Wright,* 82 Cal.App.2d 467 [186 P.2d 686], the court said at page 474:

"Moreover, the truck was driven by Belyea's employee. It is not to be denied that in an action for personal injuries caused by the negligence of an employee while operating his employer's motor car it is reasonable to infer that the use of the vehicle was authorized by the owner and that the employee was acting within the scope of his employment. (*Shields* v. *Oxnard Harbor District,* 46 Cal.App.2d 477, 487 [116 P.2d 121]; *Bushnell* v. *Tashiro,* 115 Cal.App. 563, 565 [2 P.2d 550]; *Blank* v. *Coffin,* 20 Cal.2d 457, 460 [126 P.2d 868].) The general manager of Belyea testified that Wright was in the employ of Belyea on November 15, and that he was at the shop all day of the 14th."

In *Blank* v. *Coffin, supra,* the court said at page 460:

"An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. (Cal. Code Civ. Proc. secs. 1958, 1960, 1832; see cases cited in 10 Cal.Jur. 736-738, sec. 59.) It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain pri-

mary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue. The jury is not compelled to draw the inference, however, even in the absence of contrary evidence and may refuse to do so. Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury. (See cases cited in 10 Cal.Jur. 738-739, sec. 60).''

That an inference of agency arose under the facts of the instant case is clear. Appellants contend that said inference was wholly dispelled by ''clear, positive and rationally believable testimony.'' Appellants cite *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198], a case in which the court was able to say that the testimony was so clear, uncontradicted, and unequivocal, that the court could hold as a matter of law that the inference had been rebutted. The employee in that case, after having spent the afternoon of a legal holiday in recreation at the Elks Club, took some friends riding and crashed into a parked car at a high rate of speed. Apparently there was no testimony in the case that there was any business relationships with the friends who were accompanying him, or that, as in this case, he was spending the evening in calling upon people with whom business relationships existed.

Appellants also cite *Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788], and notes that the court there quoting from *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868], said: '' 'If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it cannot rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law,' citing *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709]; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198].'' The remainder of the paragraph not quoted by appellant continues as follows: ''In the same case, after pointing out that the jury is the sole judge of the credibility of the witnesses and may disbelieve an uncontradicted witness if there is any rational ground for doing so, the court stated (p. 461): 'In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference.' ''

We are convinced from a careful reading of the record in the instant case that it cannot be held as a matter of law that the inference of agency was rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. We are convinced also that even in the absence of the inference the jury might well have concluded from the evidence that on the night of the accident Berry was on a mission for his employer.

Enough discrepancies and contradictions appear in the accounts of the three witnesses whose testimony has been discussed above, aside from considerations of motive, to demon-' strate that the state of the record is not such that this court must say as a matter of law that the testimony could not rationally be disbelieved. Rationally, the jury could not believe all of them. If they believed Howard when he said he was not expecting Berry to come to his home the night of the accident, they could not have believed Berry when he said that he had told his employer that he would be by there that evening. Berry testified that he had an understanding with his employer about dropping in on him that evening socially; but Berry went first to Huber's home on what he insisted was a social call, driving the car which had been acquired that very day; not finding Huber at home he went on to his employer's home and had to wait some time before Howard returned. Howard denied that there was any understanding that Berry was to call on him that evening. Both Howard and Berry admitted to business dealings with Huber. From this state of the evidence the jury may well have concluded that Berry was asked to take the car that had been purchased that day out to Huber to see if he had a customer for it, and that Howard did not arrive home for sometime after Berry's arrival, because he had expected Berry to spend some time with Huber. Howard was not called by the defense to testify to a course of social relationships with Berry. And although Berry's friend, Miss Sanders, said she had been to Howard's home with Berry before, Howard only testified to having seen her on one prior occasion, and that was at his *place of business*. Huber was not called by the defense to testify to a course of social relationships with Berry. The trial judge in passing on appellants' motion to limit the verdict commented on how very nervous one of the witnesses appeared in testifying. The demeanor of the witnesses was of course observed by the jury, and testimony that may appear very convincing in print, may

not be at all convincing to a jury because of the witness' manner of testifying.

We conclude that the implied finding of the jury that appellant Berry was the agent operating the automobile as employee of appellant Howard at the time of the accident finds ample support in the record.

Appellants' final contention that the amount of damages awarded is excessive has little merit. The victim of the accident was 64 years of age with a life expectancy of 11.67 years according to one set of mortality tables and 15.4 years according to another. According to the widow's testimony, he had given her from his earnings an average of $40 a week to run the house, that he was a good husband, that she had never had to work in all the years of her marriage to him. With a life expectancy of just 11 years and earnings of $40 a week an award in excess of the $18,000 awarded by the jury would be sustained by the evidence. There was also evidence of medical and burial expenses totalling more than $1,300. Furthermore the denial by the trial court of appellants' motion for a new trial indicates that he did not believe the amount awarded to be excessive. Certainly there is nothing in the record to justify us in saying that the amount awarded is such as to suggest passion or prejudice on the part of the jury.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.